# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:22-CV-167-KDB-DCK

| | |
|---|---|
| DAVID DEAN, as Administrator of the Estate of ACDONI MEJIA-LOPEZ, <br><br> Plaintiff, <br><br> v. <br><br> DARREN CAMPBELL, DARREN WILLIAMS, JOHN FLEMING KISSINGER, NICHOLAS JARED WHEELER, ADAM LOGAN CLARK, TERRY ADAM AUSTIN, BRIAN MICHAEL CASHION, and COUNTY OF IREDELL, <br><br> Defendants. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6)" (Document No. 16). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied</u> in part.

## I. BACKGROUND

David Dean ("Plaintiff" or "Dean") is the Administrator of the Estate of Acdoni Mejia-Lopez ("Mejia-Lopez"), a pretrial detainee at Iredell County Detention Center who died while in pretrial custody on October 16, 2020. (Document No. 12, pp. 7, 15). Plaintiff initiated this action with the filing of a "Complaint" (Document No. 1-2) in Iredell County Superior Court on September 28, 2022. On November 4, 2022, Defendants removed the case to this Court with the

filing of "Defendants' Petition For Removal" (Document No. 1). After "Defendants' Motion To Dismiss Pursuant To Rule 12(b)(6)" (Document No. 7) was filed on December 12, 2022, Plaintiff filed his "Amended Complaint" (Document No. 12) ("Amended Complaint") on January 1, 2023.

According to the allegations in the Amended Complaint, Mejia-Lopez was arrested by deputies of the Iredell County Sheriff's Office on October 13, 2020. Id. at p. 7.[1] Mejia-Lopez was arrested because he apparently "appeared confused, agitated, and began slamming his head against [the] police cruiser." Id. On account of his erratic behavior, deputies transported Mejia-Lopez to Iredell Memorial Hospital "for evaluation," after which he was then "transferred to Wake Forest Baptist Medical Center to evaluate a pneumomediastinum seen on imaging." Id. Two days later, on October 15, 2020, Mejia-Lopez was "discharged in stable condition" and "immediately placed back into the custody of the Defendants." Id. Deputies placed Mejia-Lopez "in the exclusive custody and control of the Iredell County Detention Center," and he "was placed in a holding cell." Id.

On October 16, 2020, detention officers observed Mejia-Lopez "engaging in behaviors within the holding cell in which he was placed that were consistent with an underlying psychiatric disorder and comparable to those observed" by deputies within the previous week that led to his arrest. Id. at pp. 7-8. In response, "the Iredell County Sheriff's Office and the Detention Officers [Defendants Williams, Kissinger, Wheeler, Clark, Austin, and Cashion, hereinafter, "Detention Officers"] elected to forcefully breach the holding cell in which Mejia-Lopez was placed for the purpose of extracting him and placing him in a restraint chair." Id. at p. 8. Detention Officers

---

[1] Notably, the Amended Complaint at various points describes the events at issue as occurring in October 2022, and at other times referencing events in October 2020. Based on the low frequency with which 2022 is used in the Amended Complaint as compared to 2020, the undersigned will assume that the events occurred in October 2020. See (Document No. 12). Furthermore, given that the original Complaint was filed in state court in September 2022, it would not be possible for the events to have occurred in October 2022 in time for a lawsuit to be brought. See (Document No. 1-2).

placed Mejia-Lopez in handcuffs, exiting the cell with him. Id. at p. 9. Mejia-Lopez, however, "began backing away from the Detention Officers while facing them." Id. He was then "immediately subdued and pinned in a corner on the ground…and remained in a completely subdued, pinned position on the ground with several Detention Officers atop his person for approximately one minute and forty-eight seconds." Id. A "spit hood" was placed over Mejia-Lopez, "which covered his face and mouth," and he was then lifted, "completely assisted," while Detention Officers "sat him in [the] restraint chair." Id. However, Detention Officers did not fasten the lap belt, did not use leg irons or shackles, did not use the handcuff tether, and did not secure the chain of the leg irons, all, Plaintiff alleges, "required by the restraint chair's manufacturer to enhance safety and prevent injury and death." Id.

Thereafter, Mejia-Lopez was placed "in a 'folded-over' position by [Detention Officers] placing their hands on his head and back to bend his torso and chest towards his knees such that his head was forcefully and unnaturally held by the Detention Officers between his knees as he sat helplessly in the restraint chair." Id. at p. 10. Mejia-Lopez sat in that position, with his head between his knees while seated in the restraint chair, for three minutes and fifteen seconds. Id. Allegedly, Defendant Wheeler was the individual who was pushing down on Mejia-Lopez's head, standing in front of him. Id. Wheeler informed "State Bureau of Investigation (SBI) investigators that Mejia-Lopez kept trying to pull his head up from being held in this position and that it took a lot of his strength to hold Mejia-Lopez in this position." Id. at p. 11. Defendant Cashion apparently "stood behind Mejia-Lopez initially and placed both of his hands on Mejia-Lopez's back and forcefully and unnaturally pushed Mejia-Lopez's back down." Id. Cashion apparently stood there for only 11 seconds, after which time Defendant Kissinger replaced Cashion in pushing down on Mejia-Lopez's back for the remaining three minutes and four seconds. Id. at pp. 11-12. The other

3

Detention Officers – including Defendants Williams, Clark, and Austin – apparently "were positioned along the left and right sides of Mejia-Lopez, presumably attempting to restrain Mejia-Lopez's appendages." Id. at p. 12. After three minutes and fifteen seconds, the Detention Officers "manually leaned his head and torso into the back of the restraint chair." Id. at p. 13. At this point, Mejia-Lopez had died. Id. at p. 16.

Plaintiff's Amended Complaint asserts that from the time the spit hood was placed on Mejia-Lopez, he "was not capable of being resistant or combative towards the Detention Officers." Id. at p. 13. Furthermore, Plaintiff contends that "Defendants either knew or should have known that forcefully holding and pushing Mejia-Lopez's body in the unnatural 'folded-over' position…was likely to injure or kill Mejia-Lopez, as this method of restraint is inconsistent with the required steps and sequence for safely utilizing the subject restraint chair." Id. at p. 14. Additionally, he contends that "Defendants Campbell and Iredell County never provided the instructions to the restraint chair to the Detention Officers," never making sure that the instructions were actually read and that failing to do so could result in injury or death. Id. In connection with failing to read or understand the restraint chair instructions, Plaintiff asserts that the Detention Officers were not "certified to use the subject restraint chair [and] had [not] completed the restraint training test." Id. at p. 15. Plaintiff asserts that "Mejia-Lopez's death is [] not the first death of an inmate in the custody of the Iredell County Detention Center that has occurred after the subject inmate exhibited signs and symptoms of an underlying psychiatric condition upon being met with force by Detention Officers." Id. at p. 16.

The autopsy performed on Mejia-Lopez's body indicated "that the cause of [his] death was classified as 'undetermined.'" Id. at p. 17. Plaintiff, contends, though, that "an appropriate

expert…will testify that [his] death was caused or contributed to be caused by potential asphyxiation stemming from the conduct of the Detention Officers." Id.

Plaintiff's Amended Complaint asserts eight claims: (1) for assault and battery against all Defendants; (2) for negligence and gross negligence against all Defendants; (3) for excessive force and deliberate indifference in violation of Mejia-Lopez's constitutional rights in violation of 42 U.S.C. § 1983; (4) for negligent training, negligent supervision, and failure to train against Defendants Campbell and Iredell County in violation of 42 U.S.C. § 1983; (5) for violation of Mejia-Lopez's 8th Amendment rights against excessive force; (6) for injury to prisoner by jailer against all Defendants in violation of N.C. Gen. Stat. § 162-55; (7) for wrongful death against all Defendants in violation of N.C. Gen. Stat. § 28A-18-2; and (8) for deprivation of life outside the law of the land in violation of Mejia-Lopez's rights under the North Carolina Constitution, Article I, sections 1 and 19. See (Document No. 12).

"Defendants' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6)" (Document No. 16) was filed February 14, 2023. "Plaintiffs' Response In Opposition To Defendants' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6)" (Document No. 20) was filed March 28, 2023. Defendants' "Reply Brief In Support Of Defendants' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6)" (Document No. 23) was filed April 21, 2023.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

I. <u>**Plaintiff's Third Claim for Excessive Force and Deliberate Indifference Under the Eighth and Fourteenth Amendments Pursuant to § 1983**</u>

Count III for Excessive Force and Deliberate Indifference under the Eighth and Fourteenth Amendments is brought against all Defendants – that is, against Defendant Campbell in his official capacity, against Iredell County, and against the other remaining individual Defendants (the Detention Officers) in *both* their individual and official capacities.  <u>See</u> (Document No. 12, p. 24). The undersigned will analyze Defendants' arguments for dismissal of Count III on a defendant-by-defendant (or group of defendants) basis.

### a. Detention Officers (Official Capacity) and Darren Campbell (Official Capacity)

First, the undersigned highlights key case law that will guide the analysis:  "[o]fficial-capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (quoting <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, n. 55)).  Therefore, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity…[i]t is *not* a suit against the official personally, for the real party in interest is the entity."  <u>Graham</u>, 473 U.S. at 166.  Therefore, when a lawsuit is brought against an individual in his or her official capacity, courts will treat the claim as effectively against the entity to which that official belongs – here, each of the Detention Officers being employed by the Iredell County Sheriff's Office and/or Iredell County.  <u>See</u> <u>McDougald v. Kersey</u>, 2022 WL 17578248, at *10 (M.D.N.C. Aug. 16, 2022).

As a result, the Court will treat the claims against the Detention Officers and against Darren Campbell in their official capacities as against the Iredell County Sheriff's Office and Iredell County.[2] Therefore, the claims against the individual Detention Officers in their official capacity should be dismissed as duplicative of the claims against Iredell County. Furthermore, the undersigned respectfully recommends that the claim against Darren Campbell be treated as against the Iredell County Sheriff's Office.

### b. Iredell County and Iredell County Sheriff's Office

Plaintiff's third claim for excessive force under § 1983 is also leveled against Iredell County (and, on account of the above discussion, also against the Iredell County Sheriff's Office). "For a Section 1983 claim of municipal liability to survive based on the alleged constitutional torts of City employees, a plaintiff must plausibly allege facts on which a reasonable fact finder could find that some municipal 'policy' or 'custom' caused a deprivation of the plaintiff's federal rights." Thompson v. City of Charlotte, 3:20-CV-370-MOC-DSC, 2020 WL 7033966, at *4 (W.D.N.C. Nov. 30, 2020) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). There must be an "underlying constitutional violation[] by any individual" municipal employee, otherwise, "there

---

[2] In the absence of further information from the parties about whether the Iredell County Sheriff's Office and Iredell County are to be treated as different entities or whether the Sheriff's Office is really just a sub-office of Iredell County, the undersigned will treat the official capacity claims as against *both* Iredell County and the Iredell County Sheriff's Office. Nonetheless, the Court is aware that case law exists that would suggest that counties and sheriff's offices are *not* to be treated as the same – that in fact, their liability is often distinct. See Parker v. Bladen Cty, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008) ("[u]nder North Carolina law, sheriffs have substantial independence from county government"); see Memorandum and Recommendation, Blackwell v. McFadden, 3:22-CV-167-RJC-DCK, (W.D.N.C. June 15, 2023). North Carolina law states that county sheriffs have the "exclusive right to…supervise the employees in [the sheriff's] office." N.C. Gen. Stat. § 153A-103. Moreover, North Carolina places "care and custody of the [county] jail" in the sheriff's office's control. N.C. Gen. Stat. § 162-22. Thus, "any allegations relating to personnel, training, or other law enforcement policies at the county jail fall within the sheriff's policymaking authority and are not attributable to the county." Jones v. Harrison, 2013 WL 1452861, at *2 (E.D.N.C. Apr. 9, 2013). Nonetheless, "counties in North Carolina may be held liable under § 1983 for inadequate medical care plans." King, 2023 WL 4163141, at *10. This is because "the county is responsible for developing a 'plan for providing medical care for prisoners' in the county jail." Id. (citing N.C. Gen. Stat. § 153A-225). Furthermore, though, "if the county delegates its authority to establish final policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability." Id. Given that this issue is not addressed in the briefs, the undersigned declines to render an opinion over whether any claims against Iredell County should be dismissed.

8

can be no municipal liability." McDougald, 2022 WL 17578248, at *10 (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999).  As a result, the undersigned must analyze whether a municipal employee committed a constitutional violation against Mejia-Lopez's rights, and only then can the undersigned analyze whether Plaintiff has adequately stated a claim for municipal liability against Iredell County under Monell.  The applicable standard for adequately stating a Monell claim is set forth below:

> Under Monell, four theories can be pursued to prove an unlawful custom, policy, or practice violates section 1983: (1) through an express policy, such as a written ordinance or regulation;  (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that 'manifest[s] deliberate indifference to the rights of citizens';  or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'"

Bailey v. Campbell, 5:22-CV-052-KDB-DSC, 2022 WL 16849126, at *2 (W.D.N.C. Nov. 10, 2022) (internal citations omitted).

### i.  Underlying Constitutional Violation

"Excessive force claims by pretrial detainees…are brought under the Due Process Clause of the Fourteenth Amendment, because the state does not have the authority to punish such detainees."  Coney v. Davis, 809 F. App'x 158, 159 (4th Cir. 2020).  Success of such a claim requires the pretrial detainee to "show only that the force purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015).  Under the "objectively unreasonable" standard, "a pretrial detainee can prevail [on an excessive force claim] by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  Id. at 398.  The Kingsley standard "turns on the perspective of a reasonable officer and

must account for the state's legitimate need to manage the correctional facility." <u>Coney</u>, 809 F.

App'x at 159. Considerations to guide the court's analysis of objective unreasonableness might

include:

> the relationship between the need for the use of force and the amount
> of force used;  the extent of the plaintiff's injury;  any effort made
> by the officer to temper or limit the amount of force;  the severity of
> the security problem at issue;  the threat reasonably perceived by the
> officer;  and whether the plaintiff was actively resisting.

<u>Kingsley</u>, 576 U.S. at 397.

Plaintiff contends that "no reasonable Detention Officer, with knowledge of the restraint

chair warning, would attempt restraint methods like forcefully holding a detainee's[sic] head

between his knees for three minutes and fifteen seconds in a willfully-blind manner inconsistent

with the restraint chair's instructions while the detainee was not resistant, incapable of being

resistant, and presented no threat." (Document No. 20, pp. 6-7). Plaintiff further argues that Mejia-

Lopez's "injury was extremely severe, as  the Detention Officers' conduct caused Mejia-Lopez's

death;  [and] no effort was made to limit the amount of force used against Mejia-Lopez by any

Detention Officer." <u>Id.</u> at p. 7. Defendants' main argument that no constitutional violation of

Plaintiff's excessive force rights occurred is that they could find "no cases dealing with allegations

of excessive force against officers who had an inmate sit with his head between his knees."

(Document No. 17, p. 13). Moreover, Defendants also posit that "the facts alleged do not show

that any officer used excessive force" because "the facts pled describe officers using reasonable

force for a short period of time to place Mejia-Lopez in a restraint chair in an attempt to stop Mejia-

Lopez from harming himself." <u>Id.</u> at p. 15. Furthermore, Defendants also contend that "a

reasonable officer could have believed or perceived that Mejia-Lopez 'pulling up hard' amounted

to Mejia-Lopez continuing to resist the officers." (Document No. 23, p. 7). The allegation in

Plaintiff's Amended Complaint is that Mejia-Lopez was "trying to pull his head up from being held" with his head between his knees, "an expected reflex for any person that is unable to breathe." (Document No. 12, p. 11).

At this stage of the litigation, before any discovery has been conducted, it is at least plausible that the Detention Officers took action that was excessive in relation to the purpose of subduing Mejia-Lopez. See Kingsley, 576 U.S. at 398. According to the Amended Complaint, Mejia-Lopez was "completely subdued" from the moment he was "pinned in a corner on the ground" after he was removed from his cell, until he was released "from the unnatural, 'folded-over' position in the restraint chair," all the while having a "spit-hood" over his head. (Document No. 12, p. 24). All of those alleged facts suggest that there was no actual threat that could have been "reasonably perceived" by a Detention Officer, viewing the evidence in the light most favorable to Plaintiff, as required at this stage of the litigation – Mejia-Lopez was entirely unable to resist, nor was he "actively resisting," at least from Plaintiff's recounting of the facts in the Amended Complaint. Kingsley, 576 U.S. at 397. Certainly, as Plaintiff argues, the extent of the injury factor cuts against Defendants – Mejia-Lopez died following the events in the restraint chair. Id.

Defendants' theory that the officers were using a reasonable amount of force to stop Mejia-Lopez from harming himself may ultimately prove true with discovery. However, at this stage of the litigation, based on the Kingsley factors, the undersigned concludes that it is at least plausible that the force used against Mejia-Lopez, a pretrial detainee, was objectively unreasonable. Factual disputes, for example, concerning whether Mejia-Lopez was in fact "resisting" by pulling his head up that might bear on the Kingsley analysis are better reserved for resolution at a later stage of the

11

litigation. Therefore, the undersigned concludes that Plaintiff has plausibly alleged that a constitutional violation of Mejia-Lopez's right to be free of excessive force has occurred.

### ii. __Monell__ Liability

Having concluded that Plaintiff has plausibly alleged that a constitutional violation occurred, the issue becomes whether the municipal Defendants can be held liable. Plaintiff alleges that Iredell County and the Sheriff's Office had "policies, customs, practices, and/or procedures" that "permit[ted] or tolerate[d] the use of excessive and/or unjustified/unreasonable force, in particular while restraining inmates and/or restraining inmates in restraint chairs." (Document No. 12, p. 27). Defendant argues that "Plaintiff's Monell claims based on alleged policies fail to satisfy the requirements of Iqbal/Twombly, because Plaintiff's allegations that Iredell County and/or the Iredell County Sheriff's Office had unconstitutional policies and/or practices…amount to nothing more than mere conclusions and 'naked assertions' which are not entitled to the presumption of truth." (Document No. 17, p. 19). Defendant goes further and contends: Plaintiff fails to "identify an express written policy, such as a written ordinance or regulation; does not identify unconstitutional decisions of a person with final policymaking authority; and does not allege facts showing a practice that is so persistent and widespread as to constitute a custom or usage with force of law." Id.

The undersigned finds that the question of whether Plaintiff's Monell claim premised on deliberate indifference through a failure to train under § 1983 can survive Defendants' motion to dismiss is a close call. Plaintiff's allegations of policies, customs, or practices are laid out in detail in paragraph 67 of the Amended Complaint. See (Document No. 12, p. 27). While the undersigned will not recount each allegation here, generally, the main policy or practice that Plaintiff emphasizes is that the Detention Officers were not "provide[d] the instructions to the restraint

chair" and the Sheriff's Office and Iredell County did not "ensure that those instructions were read and understood by the Detention Officers." Id.

This theory of municipal liability under Monell relies on a failure to properly train Iredell County Detention Officers that manifests deliberate indifference. See Spell v. McDaniel, 824 F.2d 1380, 1389-90 (4th Cir. 1987). In order to succeed on a failure to train theory of Monell liability, a plaintiff must prove that "a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). Such failures to train sufficient for liability to be imposed "include not only express authorizations of specific unconstitutional conduct, but [also] tacit authorizations, and failures to adequately prohibit or discourage readily foreseeable conduct in light of known exigencies." Spell, 824 F.2d at 1390. Importantly, though, "a specific deficiency" must be shown – allegations of "general laxness or ineffectiveness in training" are not enough. Id. This requirement ensures that a "sufficiently close causal link…[exists] between [the] potentially inculpating training deficiency…and [the] specific violation." Id.

Furthermore, Plaintiff alleges various facts that, if proven true, would demonstrate that Mejia-Lopez's case was not without precedent. "Mejia-Lopez's death is not the first death of an inmate in the custody of the Iredell County Detention Center," and it "is not the first death of an inmate in the custody of the Iredell County Detention Center wherein a lawsuit has been filed." (Document No. 12, p. 28). Furthermore, Plaintiff alleges that "Mejia-Lopez's death is not the first death of an inmate in the custody of the Iredell County Detention Center that has occurred after the subject inmate exhibited signs and symptoms of an underlying psychiatric condition upon being met with force by Detention Officers," nor is it the first death at the Iredell County Detention

Center, Plaintiff alleges, in which the inmate was "exhibiting signs and symptoms of an underlying psychiatric condition after being restrained in a restraint chair." Id. at p. 29.

Helpful caselaw from the Fourth Circuit guides the undersigned's analysis. Indeed, the Fourth Circuit has specifically stated that "[a]lthough prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens v. Baltimore City St. Attorney's Office, 767 F.3d 379, 403 (4th Cir. 2014). At the motion to dismiss stage, "[t]he recitation of facts need not be particularly detailed" when alleging a Monell claim, "and the chance of success need not be particularly high." Id. Of course, a court should dismiss a Monell claim "when the plaintiff has alleged nothing more than a municipality's adherence to an impermissible custom." Id. However, when a plaintiff alleges facts – even "brief, but non-conclusory" allegations such as "the existence of [similar] cases" – a Monell claim is sufficiently pled. Id. at 403-404.

Turning to Plaintiff's specific allegations, Plaintiff alleged the causal link required at this stage to survive Defendants' motion to dismiss. See (Document No. 12, p. 30). Furthermore, rather than just general "laxness" in training, Plaintiff has been specific in alleging a training deficiency: failing to "provide the [restraint chair] instructions to the Detention Officers" and failing to "ensure that those instructions were read and understood" despite knowing that "failing to read and understand the restraint chair's instructions can cause injury or death." Id. at p. 27; Spell, 824 F.2d at 1390.

In light of the stage of the litigation and considering that Plaintiff need not *prove* his case at this point, the undersigned declines to recommend dismissal of the Monell claim against the Iredell County Sheriff's Office and Iredell County. Plaintiff has sufficiently alleged that a policy

or practice of failing to properly train Detention Officers existed manifesting deliberate indifference to the rights of pretrial detainees to be free from excessive force.

### c. Detention Officers (Individual Capacity)

With respect to the § 1983 claim for violation of Plaintiff's rights to be free from excessive force against the Detention Officers in their individual capacities, Defendants contend that each Detention Officer is protected by qualified immunity. (Document No. 17, p. 8). Therefore, Defendants argue, the § 1983 claim against them should be dismissed. "When a government official is sued in their individual capacity, qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682-83 (4th Cir. 2023) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (1982)). The determination of whether qualified immunity shields a government official sued in his or her individual capacity from suit is a two-step process. Sharpe, 59 F.4th at 683. First, a court must analyze "whether a constitutional violation occurred;" and second, the court must understand "whether the right violated was clearly established at the time of the official's conduct." Id. (internal quotations and citations omitted). "A right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." Id. The Supreme Court's "caselaw does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018) (internal quotations and citations omitted). "[T]he [constitutional] right allegedly violated must be defined at a high level of particularity." Braun v. Maynard, 652 F.3d 557, 562 (4th Cir. 2011) (internal quotations and citations omitted). That does not mean, however, that there needs to be a case exactly on point to find that a right is clearly

established, as the qualified immunity inquiry is very "fact-specific." Beeson v. Johnson, 1990 WL 2330, at *3 (4th Cir. Jan. 2, 1990).

Here, the undersigned has already concluded that Plaintiff has plausibly alleged that a constitutional violation occurred. See supra pp. 9-11. Defendants spend most of their time analyzing whether a constitutional violation occurred at all, rather than on the second, more difficult inquiry of whether the right was clearly established. See (Document No. 17, pp. 11-16). While Defendant might be correct in asserting that there isn't a case "dealing with allegations of excessive force against officers who had an inmate sit with his head between his knees," precise factual similarity between precedent, as stated, isn't necessary for a right to be clearly established. (Document No. 17, p. 13); see Kisela, 138 S.Ct. at 1152.

In fact, there is a plethora of caselaw indicating that "[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive." Piazza v. Jefferson Cty., Alabama, 923 F.3d 947, 955 (11th Cir. 2019) (internal quotations and citations omitted). Indeed, according to the Fourth Circuit, prison officials cannot "harm a prisoner…where the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way." Thompson v. Commonwealth of Virginia, 878 F.3d 89, 105 (4th Cir. 2017) (collecting cases from various circuits). While this case concerned a convicted prisoner's Eighth Amendment excessive force claim – rather than the excessive force claim brought by Plaintiff here under the Fourteenth Amendment's due process protections on account of Mejia-Lopez's status as a pretrial detainee – the "distinction is immaterial." Parsons v. Kelley, 2021 WL 4448301, at *3 (W.D. Va. Sept. 28, 2021) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) ("The due process rights of a

pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner")).

At this stage of the litigation, the undersigned finds that Plaintiff has plausibly pled that the Detention Officers violated Mejia-Lopez's clearly established rights. Therefore, the undersigned respectfully recommends that the Detention Officers not be shielded by qualified immunity, at least at this early stage of the litigation. Mejia-Lopez was allegedly "completely subdued," "was not resistant or combative towards the Detention Officers, and posed no threat." (Document No. 12, p. 24). Nonetheless, the Detention Officers allegedly continued to "hold[] and push[] Mejia-Lopez's head between his knees while prohibiting him from unfolding himself and lifting his head up in order to breathe," resulting in his death after three minutes and fifteen seconds of being held in such position. Id. at p. 25. Moreover, since the question of whether a right is clearly established is inherently "fact-specific," further development of the record at this point is necessary. See Beeson, 1990 WL 2330, at *3. "[A]t this stage of the proceedings," the undersigned will recommend that the individual Detention Officers' motion to dismiss the § 1983 claims against them in their individual capacity for excessive force be denied. See Perdue v. Harrison, 2017 WL 4804363, at *6 (M.D.N.C. Oct. 24, 2017); see also Laschober v. Ammons, 1:21-CV-107-MR-WCM, 2021 WL 8054170, at *7 (W.D.N.C. Oct. 29, 2021) ("[w]hile the issue of qualified immunity should be addressed at the earliest stage possible, it can be difficult to determine a defendant's entitlement to qualified immunity at the pleading stage"), *report and recommendation adopted by*, 2022 WL 822165 (W.D.N.C. Mar. 18, 2022).

Defendants attempt to argue in their reply brief that "Plaintiff has not pled or alleged any specific factual matter showing that any individual defendant is liable under a 'bystander liability' theory." (Document No. 23, p. 21). Nonetheless, the undersigned's recommendation regarding

17

the qualified immunity shield having no applicability for the Detention Officers applies to each of the Detention Officers named as a defendant in this suit on this third claim. According to the Fourth Circuit, "if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." Randall v. Prince George's Cty., Md., 302 F.3d 188, 203 (4th Cir. 2002). Although Defendant suggests that Plaintiff has failed to meet the requirements for successfully alleging bystander liability, in reality, none of the Detention Officers were true "bystanders," at least as currently alleged. Plaintiff alleges that Wheeler held Mejia-Lopez's head between his knees while Williams, Clark, and Austin "were positioned along the left and right sides of Mejia-Lopez, presumably attempting to restrain Mejia-Lopez's appendages." (Document No. 12, p. 12). Defendant Cashion initially held Mejia-Lopez's back towards the ground "for a brief period, approximately 11 seconds, before substituting his position…with Defendant [] Kissinger." Id. at p. 11. Thus, each of the Defendant Detention Officers played an active role in holding Mejia-Lopez with his head between his knees. Nonetheless, the undersigned finds that even if Detention Officers Williams, Clark, Austin, and Cashion were found to be bystanders, Plaintiff has adequately alleged the elements of bystander liability such that qualified immunity would not shield them. He has alleged that they were present at the scene and therefore "confronted with a fellow officer's illegal act," and that they could have "advise[d] or inform[ed]" the other Detention Officers "to alter or cease their forceful, unnatural 'folded-over' hold of Mejia-Lopez" but did not. Id. at p. 12; Randall, 302 F.3d at 203.

## II.  Plaintiff's Fourth Claim for Negligent Training, Negligent Supervision, and Failure to Train Pursuant to § 1983

Count IV is alleged only against Defendants Campbell and Iredell County. As described in the analysis on the third count, the undersigned will treat the lawsuit against Defendant Campbell as against the Iredell County Sheriff's Office for the reasons explained above. See supra pp. 7-8. The undersigned will analyze the claims for negligent training and negligent supervision under § 1983 below. However, to the extent Plaintiff is attempting to allege a deliberate indifference Monell claim for failure to train against the Iredell County Sheriff's Office and Iredell County, the third claim already encompasses that theory of liability, which the undersigned has analyzed above. See supra pp. 11-14.

To the extent that Plaintiff alleges a negligent training and negligent supervision claim against the municipal defendants under § 1983, the undersigned will respectfully recommend that such a claim be dismissed. See (Document No. 12, pp. 31-36). Claims related to "deficiencies in [] training policies" will only succeed where it is alleged that the "policymaker [had the] fault of at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons…mere negligence on the part of policymakers is not sufficient." Spell, 824 F.2d at 1390.

Although not entirely clear, it is possible that Plaintiff is also asserting a negligent supervision claim under state common law against the Iredell County Sheriff's Office and Iredell County. See (Document No. 12, p. 32) ("Defendant Campbell and Iredell County negligently trained, negligently supervised, and failed to train its employees, including the Detention Officers, in violation of both the common law and Mejia-Lopez's and Plaintiff's constitutional rights"). Nonetheless, there are repeated references to § 1983 throughout Defendants' briefs – in fact, Defendant makes no argument against dismissal of any potentially pled state law claim for negligent supervision. See (Document No. 17, pp. 19-21). Plaintiff's response does not mention any attempt to plead a state law claim for negligent supervision, and thus, it is unclear whether

Plaintiff's Amended Complaint seeks to state a common law claim for negligent supervision.  See (Document No. 20).

Still, the undersigned will briefly analyze the claim as if Plaintiff was attempting to plead a state common law claim for negligent supervision against Defendants Iredell County and the Iredell County Sheriff's Office.  "Under North Carolina law, the doctrine of sovereign or governmental immunity bars actions against municipalities and public officials sued in their official capacity."  Hogan v. Cherokee Cty., 519 F. Supp. 3d 263, 286 (W.D.N.C. 2021).  Indeed, "absent a waiver of immunity," municipalities and public officials "are immune from liability for the torts committed by public officials and their employees while they are performing a governmental function."  Id.  Immunity can be waived, though, through a county's "purchas[e of] liability insurance covering a particular risk."  Id. (quoting Ballard v. Shelley, 811 S.E.2d 603, 606 (N.C. 2018) (citing N.C. Gen. Stat. § 153A-435(a))).  In this case, neither side has mentioned in their briefing on the motion the issue of liability insurance (nor the doctrine of sovereign immunity, for state tort claims, for that matter).  Thus, the presumption is that immunity applies, absent some allegation about the purchase of liability insurance by Iredell County or the Iredell County Sheriff's Office.  And, Plaintiff has alleged in his Amended Complaint that Iredell County and the Iredell County Sheriff's Office have "purchased liability insurance."  (Document No. 12, p. 5).  Furthermore, the case is still in its early stages.  Thus, since Plaintiff has sufficiently alleged that Defendants have waived immunity, the undersigned will respectfully recommend that the negligent supervision state common law tort claim against Iredell County and the Iredell County Sheriff's Office proceed.

III.     **Plaintiff's Fifth Claim for Excessive Force Under the Eighth Amendment**

To the extent that Plaintiff is attempting to plead a separate claim under § 1983 for excessive force against all Defendants for violation of Mejia-Lopez's Eighth Amendment rights, such claim is duplicative of his third claim. There is no separate relief that could be obtained from pursuing this claim, for as already stated, "[e]xcessive force claims by pretrial detainees…are brought under the Due Process Clause of the Fourteenth Amendment." Coney, 809 F. App'x at 159. While convicted prisoners may bring claims for excessive force under the Eighth Amendment, Mejia-Lopez was not a convicted prisoner. Id. at 158. Thus, the undersigned will respectfully recommend that Plaintiff's fifth claim be dismissed.

## IV. Plaintiff's State Law Tort Claims for Assault and Battery and Negligence and Gross Negligence

### a. Negligence and Gross Negligence

Count II for negligence and gross negligence is brought against all Defendants – that is, against Iredell County and the Iredell County Sheriff's Office, and against the individual Detention Officers in both their individual and official capacities. The undersigned will thus analyze Defendants' arguments for dismissal of Count II on a defendant-by-defendant (or group of defendants) basis. At the outset, the undersigned notes that Defendant does not appear to contest that the basic elements of a negligence claim have been met – the issue that Defendant focuses on, instead, is whether some form of immunity applies to bar this claim. See (Document No. 17, p. 23).

### i. Iredell County and the Iredell County Sheriff's Office

As stated in section II, municipalities and public officials "sued in their official capacity" are "immune from liability for the torts committed by public officials and their employees while they are performing a governmental function, absent a waiver of immunity." Hogan, 519 F. Supp.

3d at 286; see supra pp. 19-20. Still, counties can "waive [their] immunity by purchasing liability insurance covering a particular risk." Id. (internal citations and quotations omitted). At this stage of the litigation, Plaintiff has alleged that Iredell County and the Iredell County Sheriff's Office have waived sovereign immunity through the purchase of "liability insurance." (Document No. 12, p. 5). Without any argument from Defendant as to the sovereign immunity and liability insurance issue, the undersigned finds that Plaintiff's allegations are sufficient at this stage and will respectfully recommend that Plaintiff's claim for negligence and gross negligence against Iredell County and the Iredell County Sheriff's Office survive.

### ii. Detention Officers (Individual Capacity)

Defendants contend that "the individual officers are entitled to public officer's immunity for claims of negligence and/or 'gross' negligence." (Document No. 17, p. 23). According to North Carolina law, "[t]he public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." Hogan, 519 F. Supp. 3d at 288 (quoting Campbell v. Anderson, 576 S.E.2d 726, 730 (N.C. 2003)). Nonetheless, public official immunity will not protect a public officer sued in his individual capacity for gross negligence. Hogan, 519 F. Supp. 3d at 288. Because the undersigned has already determined that Plaintiff adequately alleged that the Detention Officers violated Plaintiff's clearly established rights at this stage of the litigation, such a finding is dispositive of the immunity issue – it does not apply. See Bailey v. Kennedy, 349 F.3d 731, 742 n.6 (4th Cir. 2003) ("it is clear that there is no public officers' immunity where the officers act with malice," and a finding of malice under North Carolina law is presumed where the acts at issue "violated rights that were clearly established").

Therefore, the undersigned will respectfully recommend that Plaintiff's claim against the Detention Officers in their individual capacity for negligence be dismissed but that his claim against the Detention Officers in their individual capacity for gross negligence survive.

### b. Assault and Battery

Count I for assault and battery is brought against all Defendants. As with the negligence claim, the undersigned will analyze Defendants' arguments for dismissal of Count I on a defendant-by-defendant (or group of defendants) basis.

### i. Iredell County and the Iredell County Sheriff's Office

As the undersigned stated with respect to the analysis on Plaintiff's negligence claim, municipalities and public officials (sued in their official capacity) are "immune from liability for the torts committed by public officials and their employees while they are performing a governmental function, absent a waiver of immunity." Hogan, 519 F. Supp. 3d at 286. Again, though, that immunity can be waived through the purchase of liability insurance. Id. Here, since Plaintiff has alleged that Iredell County and the Iredell County Sheriff's Office have purchased liability insurance, therefore, the waiver of immunity is presumed. See (Document No. 12, p. 5). Thus, the undersigned will respectfully recommend that Plaintiff's claim for assault and battery against Iredell County and the Iredell County Sheriff's Office survive.

### ii. Detention Officers (Individual Capacity)

"North Carolina law recognizes that an assault and battery by a law enforcement officer may provide the basis for a civil action for damages so long as the plaintiff can show that the force used was excessive under the circumstances." Mills v. Rich, 2015 WL 5139198, at *6 (E.D.N.C. Sept. 1, 2015). Furthermore, an assault and battery claim will go forward if the federal excessive force claim survives. Id. (citing Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)). The

undersigned previously recommended that Plaintiff's claim for excessive force against the Detention Officers in their individual capacity survive. See supra p. 17. Thus, the undersigned will also respectfully recommend that Plaintiff's claim for assault and battery against the Detention Officers in their individual capacity survive as well, as these claims "go the way of…§ 1983 excessive force claims." Thomas v. Holly, 533 F. App'x 208, 223 (4th Cir. 2013). While Defendants claim that they are entitled to public official immunity on Plaintiff's assault and battery claim, the undersigned respectfully rejects such an argument. See (Document No. 17, pp. 22-23). Indeed, public official immunity will *not* protect a public official from liability where the act is done "wantonly," and it will also not apply when the public official "intends [the act] to be prejudicial or injurious to another." Thomas, 533 F. App'x at 223 (internal quotations and citations omitted). At this early stage of the litigation, where Plaintiff has sufficiently alleged that the Detention Officers held and pushed "Mejia-Lopez's body forcefully and inappropriately…until he was dead," and that they intentionally "performed [such act] with offer of injury," the undersigned concludes that at this stage, public official immunity does not apply. (Document No. 12, p. 18).

### V. Plaintiff's State Law Claim for Injury to Prisoner by Jailer in Violation of N.C. Gen. Stat. § 162-55

According to the injury to prisoner statute, "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class I misdemeanor." N.C. Gen. Stat. § 162-55. In order to succeed on a civil claim for injury to prisoner by jailer, a Plaintiff "must prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence." Ramsey v. Schauble, 141 F. Supp. 2d 584, 591 (W.D.N.C. 2001). "Criminal negligence is such recklessness or carelessness, resulting in injury

or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." Id. (internal quotations and citations omitted).

Defendants argue that "Plaintiff has not alleged any specific facts showing that any defendant intended to harm Mejia-Lopez or that any defendant acted criminally with regard to Mejia-Lopez." (Document No. 17, p. 23). In response, Plaintiff contends that he has pled the requisite facts, including "numerous criminally negligent actions and inactions, including recklessness and deliberate indifference to the rights and safety of Mejia-Lopez and others." (Document No. 20, p. 25). Plaintiff's response brief merely points the Court to various paragraphs in the Amended Complaint where such facts can be found. Id.

While such style of argument is unhelpful, leaving the Court to dredge up facts supporting criminal negligence on its own, nonetheless, the undersigned finds Plaintiff's allegations in the Amended Complaint sufficient. Among other allegations, Plaintiff has alleged that Iredell County and the Iredell County Sheriff's Office failed to provide training "in accordance with the restraint chair manufacturer's recommended…methods" and failed to ensure that any instructions on use of the restraint chair were "read and understood by the Detention Officers." (Document No. 12, p. 34). Furthermore, with respect to the Detention Officers, Plaintiff alleged that they intentionally held "his head…forcefully and unnaturally…between his knees as he sat helplessly in the restraint chair for approximately three minutes and fifteen seconds…until he was dead." Id. at p. 18. The undersigned finds that these allegations manifest the requisite reckless indifference necessary at this stage for a plausible claim of injury to prisoner by jailer. Thus, the undersigned will respectfully recommend that Defendants' motion to dismiss this claim be denied.

## VI.  Plaintiff's State Law Claim for Wrongful Death in Violation of N.C. Gen. Stat. § 28A-18-2

"The wrongful death statute in North Carolina provides a remedy to the personal representative of a decedent's estate when the decedent would have otherwise been entitled to damages caused by the defendant's 'wrongful act, neglect[,] or default.'" Franklin v. City of Charlotte, 64 F.4th 519, 537 (4th Cir. 2023) (citing N.C. Gen. Stat. § 28A-18-2(a)). "The use of excessive force is a wrongful act that can trigger the statute." Id. (internal citations omitted). Given that the undersigned already concluded that Plaintiff has plausibly alleged that Defendants used excessive force against Mejia-Lopez and were thus not entitled to qualified immunity on the § 1983 claim, such a finding is dispositive of Defendants' motion to dismiss this claim. See supra pp. 9-11. Even though Defendants argue that "each officer is entitled to public officer's immunity" on this claim, the undersigned finds this argument unavailing. (Document No. 17, p. 24); see King v. Blackwood, 2023 WL 4163141, at *13 (M.D.N.C. June 23, 2023) (denying a motion to dismiss a wrongful death claim). Furthermore, as the discussion in the above sections concludes, Defendants do not assert any argument rebutting Plaintiff's contention that Defendants waived their sovereign immunity through the purchase of liability insurance. See supra p. 21. The undersigned will thus respectfully recommend that Defendants' motion to dismiss the wrongful death claim be denied.

## VII.     Plaintiff's North Carolina State Constitutional Claim for Deprivation Of Life Outside the Law of the Land

Article I, section 19 of the North Carolina Constitution states:

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. CONST. art. I, § 19. To "assert a direct constitutional claim" under the North Carolina Constitution, a plaintiff must have "no adequate state remedy…to provide relief for the injury." Davidson v. City of Statesville, 2012 WL 1441406, at *4 (W.D.N.C. Apr. 26, 2012) (quoting Copper v. Denlinger, 5688 S.E.2d 426, 428 (N.C. 2010)). "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Collum v. Charlotte-Mecklenburg Bd. of Educ., 2010 WL 702462, at *3 (W.D.N.C. Feb. 23, 2010) (internal quotations and citations omitted). Based on the above analysis, the undersigned is recommending that many of Plaintiff's state law claims survive. Thus, since an adequate state remedy is available, the undersigned will respectfully recommend dismissal of Plaintiff's state constitutional claim for deprivation of life outside the law of the land.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6)" (Document No. 16) be **GRANTED in part and DENIED in part** as follows:

- Count I – Iredell County, Campbell – <u>deny</u> dismissal

- Count I – Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual capacity) – <u>deny</u> dismissal

- Count I - Williams, Kissinger, Wheeler, Clark, Austin, Cashion (official capacity) – <u>grant</u> dismissal

- Count II – Iredell County, Campbell – <u>deny</u> dismissal of negligence and gross negligence claims

- Count II - Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual capacity) – <u>deny</u> dismissal of gross negligence claim;  <u>grant</u> dismissal of negligence claim

- Count II - Williams, Kissinger, Wheeler, Clark, Austin, Cashion (official capacity) – <u>grant</u> dismissal of negligence and gross negligence claims

- Count III – Iredell County, Campbell – <u>deny</u> dismissal

- Count III – Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual capacity) – <u>deny</u> dismissal

- Count III  - Williams, Kissinger, Wheeler, Clark, Austin, Cashion (official capacity) – <u>grant</u> dismissal

- Count IV – Iredell County, Campbell – <u>grant</u> dismissal of § 1983 claim;  <u>deny</u> dismissal of state common law claim

- Count V – Iredell County, Campbell, Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual and official capacities) – <u>grant</u> dismissal

- Count VI – Iredell County, Campbell – <u>deny</u> dismissal

- Count VI – Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual capacity) – <u>deny</u> dismissal

- Count VI  - Williams, Kissinger, Wheeler, Clark, Austin, Cashion (official capacity) – <u>grant</u> dismissal

- Count VII – Iredell County, Campbell – <u>deny</u> dismissal

- Count VII – Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual capacity) – <u>deny</u> dismissal

- Count VII - Williams, Kissinger, Wheeler, Clark, Austin, Cashion (official capacity) – <u>grant</u> dismissal

- Count VIII – Iredell County, Campbell, Williams, Kissinger, Wheeler, Clark, Austin, Cashion (individual and official capacities) – <u>grant</u> dismissal

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: July 14, 2023

David C. Keesler
United States Magistrate Judge

29